The People of the State of Illinois, Appellant, v.
Maurice H. Kamm, et al.
The City of Lake Forest, the City of Lake Forest
School District No. 67, Community High School
District No. 115 and the Lake Forest Mosquito
Abatement District, a Municipal Corporation, Ap-
pellees, v. The People of the State of Illinois, the
County of Lake, a Body Politic and Corporate,
and the County Treasurer of the County of Lake,
Appellants.

Gen. No. 11,815.

Second District.

May 1, 1964.

Bruno W. Stanczak, State's Attorney, of Waukegan,
for appellants.

Gardner, Carton, Douglas & Chilgren, of Chicago, for appellees.

SCHEINEMAN, J.

The general taxes on certain property in Lake County went unpaid for a period of years from 1940 to 1955. By authority of the Board of Supervisors, a suit was filed to foreclose the tax lien, with the property owners as defendants. The foreclosure decree found that the principal of taxes then due totaled $266,317.65, plus accrued penalties, interest and costs totaling $277,853.64.

The sale brought $175,000 which the court approved and directed the County Treasurer to make distribution as provided by law. The treasurer retained in the county treasury more than $100,000 for fees, commissions, penalties, interest, and costs, and distributed something less than $75,000 of the $175,000 to the various taxing bodies, including the county. Thereupon, the municipalities involved filed an intervening petition in this suit alleging the distribution was illegal, and prayed that the treasurer be required to retain only his and the state's attorney's fees and costs, and to prorate the balance among the several taxing authorities. The petition was allowed, and a decree entered accordingly, from which this appeal was taken to the Supreme Court and transferred by its order to this court.

For the petitioning municipalities it is contended that, the primary purpose of the Revenue Code is to provide the necessary revenue in the form of taxes to the various taxing authorities, in order to meet their lawful appropriations; and that the provisions for penalties and interest charged on delinquent taxes are intended, as a form of coercion, to induce the owners of property to pay the taxes with reasonable promptness. It is further contended that when the total amount collected is not sufficient even to pay the prin-

448

cipal of the taxes levied, there is nothing available for interest and penalties.

For the respondents it is contended that the accrued penalties and interest, as charged on the books of the county, thereby acquire a lien, at least equal to that of the principal of taxes, and when a collection is made, the amount received must be prorated on the basis of these figures for principal of taxes, and interest and penalties. This proposal is advanced as a basis for the county to share in the funds realized, on a pro rata basis, as the amounts appear on the books, even though this results in a substantial reduction in the principal amount of taxes payable to taxing authorities.

Much reliance is placed on the wording of section 216 of the Revenue Act of 1939 as amended in 1955. In the current statutes this section now appears as paragraph 697 of ch 120, Ill Rev Stats. In the early history of this state the method of collecting delinquent taxes was by forfeiture of the property. Eventually an attempt was made to use the remedy of foreclosure in equity, but the Supreme Court held that this procedure was not available unless authorized by statute. Accordingly, in 1881 the legislature did authorize this additional means of collecting taxes. The section has been amended from time to time, largely in respect to the rates or amounts of penalties, but there has been no departure from the original expressed provisions authorizing foreclosure of such liens in equity.

There is nothing in the section to provide for compensation to any official for his services or for any additional income to the county. These items are provided for in other sections.

The only provisions anywhere in the statutes fixing compensation for personal services appear in the statute on fees and salaries, ch 53, Ill Rev Stats. Section 8 thereof contains this provision: "in proceedings to

foreclose the lien of delinquent real estate taxes, state's attorneys in counties of the first and second classes shall receive a fee, to be credited to the earnings of their office, of 10% of the total amount realized from the sale of real estate, . . ." Section 39 of the same statute provides for a commission to the county collector which is a maximum of 3% in counties of the first and second class.

There are two sections in the Revenue Code authorizing payments into the county treasury of interest on delinquent taxes. These sections appear in the current statute as paragraphs 705 and 753 of ch 120. The first provides for interest on delinquent taxes "until paid or forfeited." The other section concerns redemption and directs the person redeeming to pay "interest prior to forfeiture." Section 705 also states "all such collections on account of interest shall be paid into the county treasury to be used for county purposes." Note the word *collections*. There is no reference to mere bookkeeping accruals.

The statute must be further examined for some provision which may cover a sale for less than the lien. There is a provision which now appears as paragraph 727 of the Revenue Act. The section purports to be directed only to cases in which lands have been forfeited for taxes. As previously noted, this was originally the chief method of enforcing the collection of taxes. The section provides that such forfeited land may be sold where the county judge, county clerk, and county treasurer certify that the taxes equal or exceed the value of the land, and directs that the amount received from the sale "shall be paid by such collector, pro rata, to the custodians of the several funds entitled thereto."

It should be observed that this section is the only provision in the statute that specifically applies to a case in which the land has a value of less than the

450

total of taxes and special assessments. Nothing is said about interest or penalties. On the contrary, the direction to the collector to pay pro rata to the custodians of the funds specifies that it is the *amount received* from any such sale.

We now refer back to section 216 (now 697 of ch 120). The latter portion refers not only to foreclosure of tax liens but includes also "petitions to enforce the same." Taxes collected "in either of such proceedings" are to be distributed to the respective authorities entitled thereto. It becomes apparent that the legislature has not intended any distinction in the disposition of funds realized after tax forfeiture, as compared to amounts recovered by foreclosure in equity.

If a private individual forecloses a lien on real property, and the sale does not bring enough to pay the amount of the principal, he would not think of regarding any of the recovery as interest, nor would he be required to account for any part of it as income received by way of interest. It seems strange to argue that bookkeeping entries in the county's books, adding interest and penalties to the levied taxes, gives them some kind of status, so that the taxing bodies must pay part of the penalties so assessed, even though the property value will not pay the principal of the levied taxes. The provision of paragraph 727 directing that the total amount received, on a sale for less than the principal of taxes, should be distributed pro rata to the custodians of the several funds, precludes this concept. It is the sense of the provision that, if the sale does not even satisfy the principal of taxes levied, nothing has been collected as interest or penalties.

Plaintiff's brief refers to a dictum in People v. Anderson, 380 Ill 158, 43 NE2d 997, concerning participation on a pro rata basis, but the actual decision was a reversal of that portion of the decree which allowed the collector to recover cost and redemption fees as-

451

sessed upon prior tax sales of the same property. The opinion at page 169 blends some wording of the three-officer sale along with the foreclosure section. Since the three-officer sale of forfeited property (now section 727 of ch 120) clearly directs distribution of the fund to the taxing bodies, and the other section makes no distinction between sales of forfeited property and foreclosures in equity, the meaning of the dictum is clouded.

No case has been cited to us, nor have we been able to find any, to the effect that any part of the burden of interest or penalties which are not collected, should be shifted to the taxing bodies and deducted from their tax levies. When the amount collected is more than sufficient to satisfy the amount due as principal of taxes, the general trend in other states has been summarized as follows:

> "Unless otherwise directed, interest, penalties and costs collected on delinquent taxes follow the tax and go to the state, county, or city according as the one or the other is entitled to the tax itself; and, in cases where two or more of these are interested in the tax, such interest and penalties should be apportioned among them in the ratio of their respective shares of the tax, the foregoing being sometimes provided for by statute. But the legislature may change this rule and dispose otherwise of interest or penalties." 61 CJ Taxation, Section 2250; to similar effect 85 CJS Taxation, Section 1064.

Part of the argument for the county in this case is to the effect that the word "taxes" always includes penalties. The exact reverse of this contention was made by a county in People v. Nash, 364 Ill 224, 4 NE2d 101, and sustained by the court. The opinion

refers to many statutory provisions where the word "taxes" means levied taxes, as distinct from penalties assessed by law, and holds the distinction applies in some sections of the Revenue Act.

In the Nash case the amount collected included both taxes and penalties. There was no question raised as to the distribution of levied taxes; the controversy was limited to the amount over and above the principal of taxes. The court did not concern itself with what amount might appear on the county's books as interest or penalties. The opening sentence of the majority opinion states: "The sole inquiry here is whether *collected* penalties on forfeited real estate are to be paid to the county, or distributed to the various taxing bodies." (Emphasis supplied.)

The opinion analyzes a number of sections of the Revenue Act, and gives particular emphasis to the provision we have previously mentioned, appearing in paragraph 705, that "all such collections on account of interest shall be paid into the county treasury to be used for county purposes." The conclusion arrived at was that all of the interest and penalties collected should be paid to the county treasury, for county purposes, with no distinction between interest accrued before forfeiture or thereafter. Attention was called to the fact that there is no other provision for the disposition of collections on account of interest accrued after the forfeiture. Thus, the majority of the court departed from the general rule stated above, and which was advocated by three justices who dissented.

The fact that the court referred to "collected penalties" is significant, since it is in accord with our statute, which applies only to *collections* on account of interest. Neither that decision, nor any other in any court of review, supports the contention of the respondents that the amount to be paid to the county

treasury is to be based on the accrued interest and penalties as shown by the books even though none of these additional amounts have been realized by any type of collection.

The majority of the court in Nash believed the collections in excess of levied taxes went to the county as compensation for services as "fiscal agent" for the taxing bodies. At that time (1936) there was no fee provided for the State's Attorney, this was added in 1943. Here the commission of the collector is $4,725 and the fee of the attorney is $17,500 in this one suit. This would seem to be adequate compensation to the county. Perhaps if similar facts had been before the court in 1936, the decision might have been different, the present appeal would not have happened, and we would not be asked to allot the county a large sum as compensation, in addition to fees and commissions fixed by statute.

In compliance with the Nash ruling, when collections by foreclosure of tax liens suffice to pay fees and commissions of county officers and all levied taxes, any excess remaining goes to the county, but this court interprets the statute to mean, and we so hold, that apart from the county's own tax levy, and the compensation for services fixed by law, the only additional sums due and payable to the county treasury must be collected over and above the principal of levied taxes, and if there is no excess, then there is nothing more to be paid to the county treasury.

Our attention is called to an opinion of the Attorney General issued in 1942 which cites the Nash case and apparently infers that, if the full lien is not collected, a pro rata distribution applies to penalties as well as tax levies. For the county, fear is expressed that pronouncement of a different rule may bring on a rash of suits on stale claims where a county has made distributions in the past, in reliance upon that opinion.

Counsel for both sides suggest that this risk may be avoided if such a pronouncement is made prospective only, after the manner of Molitor v. Kaneland Community Unit. Dist., No. 302, 18 Ill2d 11, 163 NE2d 89. The suggestion is a good one, and is hereby adopted.

Accordingly, this decision is limited in its application to this present appeal, to future tax foreclosure suits, and to pending suits in which distribution has not been made prior to the date this opinion becomes final in this court, or in the Supreme Court if further review is allowed. It shall have no retroactive effect as to distributions made prior to that date, except the one involved herein as to the parties named as appellees.

Decree affirmed prospective only.

ABRAHAMSON, P. J. and CARROLL, J., concur.