## S1 IL304 LIMITED LIABILITY COMPANY, Plaintiff,

### v.

## ANB CUST. FOR LG, Cook County ex rel., Hynes, et al., Defendants.

### No. 96 C 2091.

United States District Court, N.D. Illinois, Eastern Division.

Dec. 11, 1996.

---

Edward Sidney Weil, Jill Anne Glickstein, Gary P. Segal, Schwartz, Cooper, Greenberg & Krauss, Chicago, IL, for plaintiff.

Mark R. Davis, Jason Thomas Shilson, O'Keefe, Ashenden, Lyons & Ward, Chicago, IL, for ANB CUST. FOR LG.

David Mark Lavin, Cook County State's Attorney's Office, Chicago, IL, for Thomas C. Hynes, Edward J. Rosewell, David Orr.

Stanford D. Marks, Chicago, IL, for Phoenix Bond & Indemnity Company.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

The plaintiff, S1 IL304, a Delaware limited liability company ("S1"), instituted this declaratory judgment action seeking to declare that (1) the tax liens and penalties on its real

property are invalid based on prior ownership of the property by the Resolution Trust Corporation ("RTC"); and (2) S1 has a right to challenge the County Assessor's assessments of the property, the value of those assessments, and the property tax based thereon. Defendants, ANB Cust. for LG, Phoenix Bond & Indemnity Company, and Thomas Hynes, Edward Rosewell and David Orr in their official capacities as Cook County Assessor, Treasurer and Clerk, respectively, ("Defendants") have moved to dismiss the plaintiff's complaint for a lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. In the alternative, the defendants have moved to dismiss for failure to state a claim, pursuant to Rule 12(b)(6), FED.R.CIV.P. Because the Court lacks jurisdiction to hear this matter, the motion is granted.

### Facts

The origins of this case can be traced back to the turmoil that engulfed the savings and loan industry in the early part of this decade. In November 1992, the RTC seized control of Irving Federal, which had extended a loan secured by a mortgage on the property known as 811 West Evergreen Avenue, Chicago, Illinois (the "Property"). Shortly thereafter, the RTC was appointed as the receiver for Irving Federal as well as for its successor, the newly chartered Irving Federal Bank for Savings, F.S.B. ("Irving"). Irving succeeded to all of the assets and liabilities of its predecessor, and as a receiver for Irving, the RTC succeeded to all of Irving's rights in and to the loan and mortgage surrounding the property. In January 1994, the RTC assigned the loan and mortgage to a Delaware business trust, which is not a party to this action. That trust subsequently foreclosed on the property and assigned its certificate of sale of the property to S1. In February 1995, S1 acquired a judicial deed to the property.

The defendants are involved in these transactions by virtue of their purchase of tax certificates on the property now owned by S1. Cook County sold certain tax liens for delinquent real estate taxes on the property which were purchased by ANB and Phoenix. In March 1994, ANB purchased a tax certificate representing a lien for the second installment of 1992 real estate taxes; it later added tax certificates for all of 1993 and the first installment of 1994. In October 1995, Phoenix purchased a tax certificate for a portion of the 1991–1992 taxes.

### Subject Matter Jurisdiction

■ S1 has brought its suit pursuant to 12 U.S.C. § 1825(b) which is part of the Financial Institutions Reform, Recovery and Enforcement Act (FIRREA). FIRREA was enacted as part of Congress' plan to permit the government to address many of the problems that faced the savings and loan industry. Under FIRREA, any case in which the RTC is named as a party is deemed to "arise under the laws of the United States," thereby granting federal question jurisdiction. 12 U.S.C. § 1441a(a)(11) (1994). The RTC, however, is not a party to this case. Therefore, the jurisdictional issue turns on whether S1, as the transferee of the RTC's rights, title and interest in the property, may assert the jurisdictional grant given to the RTC pursuant to FIRREA.

As a preliminary matter, S1 bears the burden of establishing the elements of federal jurisdiction. *NLFC, Inc. v. Devcom Mid-America, Inc.*, 45 F.3d 231, 237 (7th Cir. 1995). It seeks to meet this burden by citing a number of cases in which the RTC's rights under FIRREA have been extended to third parties. For example, in *D'Oench, Duhme & Co., Inc. v. F.D.I.C.*, the Supreme Court held that a debtor may not assert any secret or side agreements against the FDIC as defenses to enforcement of a note. 315 U.S. 447, 458–459, 62 S.Ct. 676, 679–680, 86 L.Ed. 956 (1942). This doctrine was codified later, creating a four part test for invalidating secret debtor agreements. 12 U.S.C. § 1823(e) (1994). Subsequent cases extended the protections of the *D'Oench, Duhme* doctrine to assignees of the FDIC, *Bell & Murphy & Assoc. v. Interfirst Bank Gateway*, 894 F.2d 750, 754 (5th Cir.1990), and to private purchasers of the assets of failed institutions taken over by the FDIC. *Porras v. Petroplex Sav. Assoc.*, 903 F.2d 379, 381 (5th Cir. 1990). Private parties also have been al-

lowed to make use of the FDIC's six year statute of limitations on enforcement of promissory notes of failed thrifts. *F.D.I.C. v. Bledsoe,* 989 F.2d 805, 810 (5th Cir.1993). Finally, status as a holder in due course has been extended to private parties who acquire notes from the FDIC. *F.D.I.C. v. Newhart,* 892 F.2d 47, 50 (8th Cir.1989).

Nevertheless, I find these cases to be unpersuasive. The rationale behind the extension of certain rights belonging to the FDIC or RTC under FIRREA [1] does not apply in the context of subject matter jurisdiction. Courts which have extended the *D'Oench Duhme* doctrine, the statute of limitations to private parties, and holder in due course status have done so because of their belief that to do otherwise "would emasculate the policy behind § 1823(e)," *Newhart,* 892 F.2d at 50, and would run "contrary to the policy of allowing the FDIC to rid the federal system of failed bank assets." *Bledsoe,* 989 F.2d at 811. In this case, however, S1's inability to bring suit in federal court does not undercut the policy objectives behind FIRREA. S1's claims still may be adjudicated in another forum. Those claims can be heard just as effectively and efficiently in state court as they can be in this Court. Therefore, S1 does not assume the status of the RTC for jurisdictional purposes.

Indeed, several other courts have reached an identical result. In *RTC Commercial Loan Trust 1995–NP1A v. Winthrop Management,* the court held that "nothing in the statute or the common law of *D'Oench, Duhme* indicates that RTC may assign federal court jurisdiction here. On the facts of this case, RTC may assign neither its federal court jurisdictional section, § 1441a(a)(1), nor its status as a federal party." 923 F.Supp. 83, 88 (E.D.Va.1996); *see also Vanderbilt Mortgage & Fin. Co. v. Acceptance Ins. Co.,* No. 96–0155, 1996 WL 87224, at *2 (E.D.La. Feb. 28, 1996) (holding that private party was not an agent of the RTC for purposes of invoking federal removal jurisdiction). *But see National Enter. Inc. v. Smith,* 892 F.Supp. 948, 951 (E.D.Mich.1995) (holding

that RTC could assign its right to sue in federal court). Moreover, this exact issue has been addressed and answered in this District. Judge Robert W. Gettleman, facing a case with an almost identical set of facts to the instant one, held:

> the grant of federal jurisdiction in Section 1441a(a)(11) is a right personal to the governmental agency that is not assignable. Extending certain defenses, and even statutory limitations periods, is decidedly different than extending this court's original jurisdiction. Congress explicitly stated that federal subject matter jurisdiction would exist when the RTC is a party to the lawsuit. It could have identified the RTC or its assigns, but did not.

*RTC Commercial Assets Trust 1995–NP3–1, v. Phoenix Bond & Indemnity Co.,* 943 F.Supp. 962, 965 (N.D.Ill.1996).

S1, however, has raised an additional basis for subject matter jurisdiction. Regardless of the assignability of the RTC's specific jurisdictional grant in Section 1441a(a)(11), S1 contends that general subject matter jurisdiction exists pursuant to 28 U.S.C. § 1331 because its entire cause of action is based on a federal law and therefore arises under federal law.

In this case, S1 seeks declaratory relief pursuant to 28 U.S.C. § 2201. The Declaratory Judgment Act itself, however, does not confer subject matter jurisdiction. *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 671, 70 S.Ct. 876, 878–79, 94 L.Ed. 1194 (1950). Rather, the Court must have some independent basis upon which it may exercise its jurisdiction. The existence of federal question jurisdiction is based on the "well-pleaded complaint rule" which requires that a federal question be presented on the face of a plaintiff's complaint. *GNB Battery Technologies, Inc. v. Gould, Inc.,* 65 F.3d 615, 619 (7th Cir.1995). In the context of a declaratory judgment, "the well pleaded complaint rule dictates that jurisdiction is determined by whether federal question jurisdiction would exist over the presumed suit by the declaratory judgment defendant." *Id.*

---

**1.** Although many of the cases refer to the FDIC, the RTC has the same powers, rights, and restraints which are granted to the FDIC with respect to its status as a receiver for failed thrifts. *See* 12 U.S.C. § 1441a(b)(4)(A) (1994).

Hence, if the presumed suit involves only a defense based on federal law, that defense is not enough to invoke this Court's jurisdiction. *Skelly Oil,* 339 U.S. at 672, 70 S.Ct. at 879.

Two exceptions to these rules exist. The first exception occurs when federal law has preempted an area of the law so completely that any claim cannot be framed in state law terms and necessarily must arise under federal law. *Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 23–24, 103 S.Ct. 2841, 2853–2854, 77 L.Ed.2d 420 (1983). The second exception allows a federal court to take jurisdiction over a plaintiff's state law claim where "the right to relief necessarily depends on resolution of a substantial question of federal law." *Id.* at 28, 103 S.Ct. at 2856.

Applying these principles to the instant case reveals that this Court does not have general federal question jurisdiction over S1's request for declaratory relief. S1 seeks a declaration that a federal law prevents the defendants from exercising their rights under state law. If any or all of the defendants in this action filed suit in state court seeking to enforce their tax liens, however, those suits would be based on state law. A federal question would enter the case only if S1 asserted the protections of Section 1825(b), which it alleges have been assigned to it, as a defense to such an enforcement action. Consequently, no federal question jurisdiction would exist over such a suit, and therefore no federal question jurisdiction can exist in a declaratory action based on such a suit.

Moreover, FIRREA does not preempt state law so completely that S1's suit necessarily must arise under federal law. State courts can and do address cases which involve the RTC and FIRREA. *See, e.g., Teerling Landscaping, Inc. v. Chicago Title & Trust Co.,* 271 Ill.App.3d 858, 208 Ill.Dec. 482, 649 N.E.2d 538 (2nd Dist.1995). Finally, whether the provisions of Section 1825(b) can be extended to private parties is not the only issue upon which this case may be decided in state court. In fact, the parties' briefs in this case indicate that Section 1825(b) may have no applicability at all given the timing and priority of the liens in this case. Hence, if the defendants sue to enforce their liens in state court, their right to relief *may* depend, but not *necessarily,* on the resolution of a federal question.

### Conclusion

S1 cannot invoke either the specific jurisdictional grant given to the RTC or general federal question jurisdiction. Therefore, this case is dismissed without prejudice for lack of subject matter jurisdiction.